UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| AGVIQ, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>RIGHT WAY ENVIRONMENTAL<br>CONTRACTORS,<br><br>        Defendant. | CIVIL ACTION<br>NO. 3:17-02034-WGY |

YOUNG, D.J.[1]                                    March 1, 2018

## MEMORANDUM AND ORDER

### I.      INTRODUCTION

After the defendant Right Way Environmental Contractors ("Right Way") initiated arbitration proceedings against the plaintiff Agviq, LLC ("Agviq"), Agviq filed this action against Right Way seeking the Court's declaration that the dispute is not arbitrable and requesting that the Court enjoin the ongoing arbitration proceedings.  Right Way moved to dismiss Agviq's complaint for failure to state a claim, and the Court determined that the motion ought be treated as one for summary judgment.  Agviq now moves for leave to file an amended complaint.

---

[1] Of the District of Massachusetts, sitting by designation.

## A. Procedural History

On October 19, 2016, Right Way filed a Demand for
Arbitration against Agviq before the American Arbitration
Association ("AAA").[2] Compl. Ex. 6. Several months later, on
August 2, 2017, Agviq filed a complaint in federal court against
Right Way, seeking declaratory relief and a stay of arbitration
proceedings. Compl., ECF No. 1. After Chief Judge Delgado-
Colón of the District of Puerto Rico[3] denied Agviq's request for
a stay on the grounds that Agviq had not formally moved for an
injunction or restraining order, Agviq moved for a preliminary
injunction. Mem. & Op., ECF No. 10; Mot. Prelim. Inj., ECF No.
11. Right Way moved to dismiss Agviq's complaint for failure to
state a claim and opposed the motion for a preliminary
injunction. Mot. Dismiss Compl. ("Mot. Dismiss"), ECF No. 16;
Mot. Dismiss Req. Prelim. Inj., ECF No. 19. Agviq opposed the
motion to dismiss and filed an "[u]rgent informative motion"
notifying the Court that the AAA arbitrator (the "Arbitrator")

---

[2] The parties appear to disagree over the date on which the
Demand for Arbitration was filed. Whereas Agviq alleges that it
was filed on November 10, 2016, Compl. ¶ 18, Right Way maintains
that it was filed on October 19, 2016, Mot. Dismiss at 7. It
appears that Agviq is mistaken, since the copy of the Demand for
Arbitration that Agviq submitted as an exhibit indicates that it
was sent on October 19, 2016. Compl. Ex. 6. In any event, the
date on which the Demand for Arbitration was filed is not
material in this case.

[3] At the time, this matter had been temporarily referred to
Chief Judge Delgado-Colón. See Mem. Op. 2 n.1, ECF No. 10.

had also denied its request for a stay of arbitration proceedings. Opp'n Mot. Dismiss Compl. ("Opp'n Mot. Dismiss"), ECF No. 27; Urgent Informative Mot., ECF No. 21. Right Way moved to strike the "urgent informative motion" on the ground that it was an unauthorized reply to Agviq's request for a preliminary injunction. Mot. Strike, ECF No. 26.

On November 14, 2017, this Court heard oral argument on these motions and denied Agviq's motion for a preliminary injunction. See Min. Entry, ECF No. 34. The Court ruled that the question of arbitrability was for judicial determination and explained to the parties that it would treat the motion to dismiss as a motion for summary judgment. See id. After requesting further briefing, it took the remaining motions under advisement. See id. Agviq now moves for leave to file an amended complaint, Mot. Leave File Am. Compl. ("Mot. Leave Am."), ECF No. 31, and for reconsideration of both the Court's denial of its request for a preliminary injunction and its decision to rule on summary judgment, Mot. Recons., ECF No. 36.

## B. Undisputed Facts

On October 15, 2014, Agviq and Right Way entered into a contract obligating Right Way to provide subcontracting services in connection with a construction project in Ceiba, Puerto Rico (the "Subcontracting Agreement"). Compl. ¶ 6. The Subcontracting Agreement was drafted in light of and

incorporates certain terms of a separate contract between Agviq, as prime contractor, and the Naval Facilities Engineering Command (the "Navy"), as the owner of the project (the "Prime Contract").  Id. ¶ 8.

### 1.  Prime Contract

One of the clauses in the Prime Contract is the Federal Acquisition Regulation Clause 52.233-1 (the "Disputes Clause"). Id. ¶ 12.  The Disputes Clause provides that the Prime Contract is subject to Title 41, Chapter 71 of the U.S. Code (the "Contracts Disputes Act"), and it states that except as provided in the Contract Disputes Act, all disputes arising under the Prime Contract are to be resolved under the Disputes Clause. Compl. Ex. 2 ("Subcontracting Agreement") Ex. F, ECF No. 1-2; Compl. Ex. 4 ("Prime Contract") 85, ECF No. 1-4.

The Disputes Clause defines "claim" as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract."  Subcontracting Agreement Ex. F, 52.233-1(c).  When submitting any claim over $100,000, a contractor must certify the claim.  Id. 52.233-1(d)(2)(i).  The certification must state that the claim is made in good faith, that the supporting data are accurate and complete, that the amount requested accurately reflects the

contract adjustment for which the contractor believes the government is liable, and that the contractor is authorized to certify the claim.[4]  Id. 52.233-1(d)(2)(iii).

### 2. Subcontracting Agreement

The Subcontracting Agreement fully incorporates the Disputes Clause and incorporates many other Prime Contract provisions by reference.  In reference to these incorporated provisions, Exhibit F of the Subcontracting Agreement states:

> By the terms of this Agreement, these clauses have application to Subcontractors and their subcontractors as well. The clauses have been duplicated here directly from the prime contract . . . . The clauses . . . are incorporated herein and made a part of this agreement. In all such clauses, for the purposes of this agreement . . . the term Contractor shall mean Seller or Subcontractor and the term Contract shall mean this Subcontract Agreement. . . . It is intended that the clauses apply to Seller/Subcontractor necessary to reflect the position of Seller as a Subcontractor to AGVIQ, LLC and to secure Seller's obligations to AGVIQ, LLC and to the United States Government, enabling AGVIQ, LLC to meet its obligations under its Prime Contract with its Client.

The Subcontracting Agreement also includes an arbitration clause, through which the parties agree to arbitrate "[a]ll claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof."

---

[4] These requirements parrot those in the Contract Disputes Act itself.  See 41 U.S.C. § 7103.

Subcontracting Agreement, Art. 24.1.  The arbitration clause

provides that any arbitration will be "in accordance with the

Construction Industry Arbitration Rules of the American

Arbitration Association" and that the agreement to arbitrate

shall be governed by the Federal Arbitration Act.  Id.

The arbitration clause proceeds to delineate certain

exceptions to arbitration.  Article 24.2 of the Subcontracting

Agreement states that the agreement to arbitrate shall not apply

to any claim:

> 24.2.1    of contribution or indemnity
> asserted by one party to this Agreement
> against the other party and arriving out of
> an action brought in a state or federal
> court or in arbitration by a person who is
> under no obligation to arbitrate the subject
> matter of such action with either of the
> parties hereto or does not consent to such
> arbitration; or
>
> 24.2.2    asserted by the Subcontractor
> against the Contractor, if the Contractor
> asserts said claim, either in whole or part
> against the Owner, or asserted by the Owner
> against the Contractor,
>
> 24.2.3    when the contract between the
> Contractor and Owner does not provide for
> binding arbitration, or does so provide but
> the two arbitration proceedings are not
> consolidated, or the Contractor and Owner
> have not subsequently agreed to arbitrate
> said claim, in either case the parties
> hereto shall notify each other either before
> or after demand for arbitration is made.

The arbitration clause further provides that the question of arbitration "shall be decided by the appropriate court and not by arbitration." Id., Art. 24.2.

### 3. Demand for Arbitration

On October 19, 2016, Right Way filed a Demand for Arbitration against Agviq. Compl. Ex. 6. Right Way alleged that the project's construction "was affected by numerous delays" attributable to Agviq and that it was forced to perform additional work and incur additional costs as a result. Id. In its demand, Right Way sought an additional $2,926,643.72 for these resulting costs, as well as interest and legal fees. Id.

The parties exchanged correspondence about the demand throughout December 2016 and January 2017. Compl. ¶ 19, Exs. 5, 7-8. During this time, Right Way sent Agviq a letter describing in detail the basis for its claim as well as itemizing the various fees and costs it incurred. See id. Ex. 5. Agviq's correspondence to Right Way explained that Right Way's claim, "if properly supported and certified, would be passed through to the United States by Agviq." Id. Ex. 8. Agviq explained, however, that it "has not passed Right Way's claim through to the government because Right Way's correspondence to Agviq does not meet the requirements for a claim in accordance with Right Way's subcontract." Id. Ex. 7.

On August 2, 2017, Agviq sent a letter to the Navy that purported to "submit[] the most current Right Way request for additional compensation" but did not include any statement of certification.  Id. ¶ 23, Ex. 16.  Subsequently, on November 30, 2017, the same day that it moved for leave to amend its complaint, Agviq sent another letter to the Navy.  Mot. Leave Am., Ex. 2.  In this letter, Agviq declared that it was "hereby formally submit[ting] this claim on behalf of [Right Way]" and included a statement of certification at the bottom of the letter.  Id.

## II.  ANALYSIS

A district court may, after giving the parties reasonable notice and opportunity to present relevant materials, treat a motion to dismiss as a motion for summary judgment.  See Fed. R. Civ. P. 12(d); Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 73 (1st Cir. 2014) ("[T]he district court [is] permitted to make this conversion if it [gives] the parties a reasonable opportunity to present materials pertinent to the motion.").  At the hearing on November 14, 2017, this Court notified the parties that it intended to treat Right Way's motion to dismiss as a motion for summary judgment, and it offered the parties two weeks to file further briefing.  See Min. Entry.

Neither party took advantage of this opportunity.  Instead, Agviq moved for leave to file an amended complaint and for

reconsideration of the Court's decision to address the dispute on its merits. See Mot. Leave Am. Agviq asserts that its proposed amended complaint would compel an entry of summary judgment in its favor, rendering moot Right Way's motion to dismiss. Inform. Mot. Proc. Status 3, ECF No. 32; Mot. Recons. 4. Because Agviq's proposed amended complaint is futile, and Right Way is entitled to summary judgment, the Court DENIES Agviq's motion for leave to amend and its motion for reconsideration, and it GRANTS summary judgment in favor of Right Way.

The Court first addresses its ruling on summary judgment, which provides necessary context for its subsequent discussion of the futility of Agviq's proposed amendment.

**A.    Summary Judgment**

Entry of summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," however, then summary judgment will not be granted. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the Court is not to weigh the evidence, but "must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150

(2000). For the movant to prevail, it must demonstrate that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmovant then must identify "particular parts of materials in the record" to establish the presence of a genuine dispute for trial. Fed. R. Civ. P. 56(c).

All three of Agviq's causes of action hinge on whether Right Way's claim fits within one of the arbitration exceptions to the Subcontracting Agreement. See Compl. ¶¶ 33-56. The arbitrability of a claim "depends on contract interpretation, which is a question of law" for the court's determination. Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008) (quoting Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 50 (1st Cir. 1997)). Because there is no genuine issue of material fact and neither of the arbitration exceptions applies to Right Way's claim as matter of law, Right Way is entitled to summary judgment on all counts.

### 1. Propriety of Court's Determination of Arbitrability

As an initial matter, the question of arbitrability, including both whether there is a contractual duty to arbitrate and whether or not that duty to arbitrate applies to this claim, is one for judicial determination.

Under the Subcontracting Agreement, the parties stipulated that any question as to arbitrability would be decided by a court, as opposed to an arbitrator. The arbitration clause in the Subcontracting Agreement clearly states that "[i]n any dispute arising over the application of this Paragraph 24.2, the question of arbitration shall be decided by the appropriate court and not by arbitration." Subcontracting Agreement, Art. 24.2. This provision is fairly unambiguous, and neither party contests its plain meaning. Mot. Dismiss 6.

The Arbitrator nevertheless determined that the question whether one of the exceptions to the arbitration clause applies, as opposed to the question of whether there exists a contractual duty to arbitrate the claim, is a "procedural" question properly resolved by an arbitrator. See Resolution & Order 4-6, ECF No. 21-2. The Arbitrator points to Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), in which the Supreme Court noted that while "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court," procedural questions that consider whether any "conditions precedent to an obligation to arbitrate have been met" are presumptively for the arbitrator. Id. at 84-85.

As the First Circuit explained in Marie v. Allied Home Mortg. Corp., 402 F.3d 1 (1st Cir. 2005), however, the Supreme

[11]

Court has held an issue to be procedural where it concerned "'what kind of arbitration proceeding the parties agreed to' rather than 'whether they agreed to arbitrate a matter.'" Id. at 10 (quoting Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003)). The latter, which addresses "the kind of disputes intended for arbitration," is a substantive question for the court. Id. Further, the First Circuit distinguished between questions whose resolution could cause a case to "bounce[] back and forth between tribunals without making any progress," on the one hand, and procedural "gateway" issues that ask whether the claim may proceed in any forum, on the other hand. See id. at 14 ("[The issue of waiver] is different in kind from the arbitrator's normal resolution of a gateway issue: normally, the resolution of such an issue would bar not only arbitration but any sort of litigation on the issues by either side.").

Here, the Arbitrator incorrectly characterized the question of arbitration as procedural in his order denying Agviq's request to stay the arbitration proceedings. See Resolution & Order 4-6. The question whether Right Way's claim fits within one of the exceptions to the arbitration clause is one that addresses "the kind of disputes intended for arbitration." Marie, 402 F.3d at 10. Further, this question is not one that could bar "any sort of litigation on the issues by either side." Id. at 14. If one of the exceptions applies, nothing in the

[12]

Subcontracting Agreement appears to bar Right Way from litigating its claim in another forum -- indeed, Agviq does not contend that the claims are barred but merely contends that they should be resolved according to the dispute resolution procedure set out in the Disputes Clause and the Contract Disputes Act. Thus, if the Arbitrator were to find that one of the exceptions in fact applies, the case "would inevitably end up back before the district court," causing the very inefficiency about which the First Circuit expressed concern. Id. at 13.

Because the language in the Subcontracting Agreement is clear and because relevant precedent dictates that this type of issue ought be determined judicially, the Court concludes that it is proper for the Court, and not the Arbitrator, to resolve the question of whether Right Way's claim is arbitrable under the Subcontracting Agreement.

## 2. Arbitrability of Right Way's Claims

The parties agree that at least one of the arbitration exceptions must apply for the arbitration to be precluded under the Subcontracting Agreement. See, e.g., Mot. Prelim. Inj. 5-6; Mot. Dismiss 5. If none of the arbitration exceptions apply to Right Way's claim, the claim is arbitrable and Right Way may thus compel Agviq to submit to arbitration.

The exception articulated in subsection 24.2.1 ("Exception 24.2.1"), which pertains to claims "of contribution or

[13]

indemnity," does not apply to Right Way's claim, and Agviq does not argue to the contrary. Rather, Agviq asserts that the claim fits within both of the exceptions under subsections 24.2.2 ("Exception 24.2.2") and 24.2.3 ("Exception 24.2.3"). Opp'n Mot. Dismiss 7. Though Agviq asserts that these are separate and independent exceptions, it argues that the claim satisfies both exceptions and thus arbitration is precluded even if the two are read together. See Mot. Prelim. Inj. 6 n.1 & 7. Right Way argues that Exception 24.2.2 does not apply, and because Exception 24.2.3 is only an additional condition to Exception 24.2.2, neither applies to bar the arbitration. See Mot. Dismiss 6, 16-17. The Court agrees with Right Way's position.

a.  **Exception 24.2.2**

Exception 24.2.2 of the Subcontracting Agreement provides that the "agreement to arbitrate shall not apply to any claim . . . asserted by the Subcontractor against the Contractor, if the Contractor asserts said claim, either in whole or part against the Owner, or asserted by the Owner against the Contractor." Subcontracting Agreement, Art. 24.2.2. Thus, if Agviq properly asserts Right Way's claim against the "owner" of the project (here, the Navy), the exception applies. The parties agree that in order for Agviq to assert Right Way's claim against the Navy, it must do so pursuant to the Disputes Clause in the Prime Contract, which provides that any such claim would be governed

[14]

by the Contract Disputes Act and (in this instance) must be certified. Id. Ex. F, 52.233-1. Agviq argues that by refusing to style its claim as one under the Contract Disputes Act and certify it, Right Way is not only wrongfully circumventing this exception but also preventing Agviq from meeting its obligations under the Prime Contract, in contravention of Exhibit F of the Subcontracting Agreement. Compl. ¶¶ 27-32.

Courts have long held that the Contract Disputes Act does not cover government contractors' disputes with their subcontractors. See, e.g., NavCom Def. Elecs., Inc. v. Ball Corp., 92 F.3d 877, 879 (9th Cir. 1996) (per curiam) ("Under the [Contract Disputes Act], contracting officers have jurisdiction only over claims by contractors against the government, not over claims brought directly by subcontractors."); United States W. Commc'ns Servs., Inc. v. United States, 940 F.2d 622, 627 (Fed. Cir. 1991) ("A government contractor's dispute with its subcontractor was by definition specifically excluded from CDA coverage."). Subcontractors thus may only assert claims against the government "by having the prime contractor 'sponsor' and certify the subcontractor's claim." NavCom, 92 F.3d at 880; see also Arnold M. Diamond, Inc. v. Dalton, 25 F.3d 1006, 1009 (Fed. Cir. 1994). Such a proceeding cannot resolve disputes between the subcontractor and prime contractor as to the "amount due the subcontractor," but rather addresses "claim[s] for additional

compensation to the prime contractor itself." United States v. Zurich Am. Ins. Co., 99 F. Supp. 3d 543, 547 (E.D. Pa. 2015).

In Agviq's view, Right Way's claim is properly considered a claim under the Contract Disputes Act because the delay that constitutes the basis for Right Way's claim against Agviq is actually attributable to Navy conduct and thus amounts to a challenge to the conduct of the Navy. Opp'n Mot. Dismiss Req. Prelim. Inj. 9-10, ECF No. 23. Right Way argues that its claim cannot be classified as a claim under the Contract Disputes Act because the Contract Disputes Act governs only claims against the government, and its claim is expressly against Agviq. Mot. Dismiss Req. Prelim. Inj. 10-11. Therefore, it contends, Agviq may not "pass through" the claim to the Navy and Right Way is under no obligation to help it do so. Right Way is correct.

Prime contractors may not simply sponsor and certify any subcontractor claim. Though "it remains an open question to what extent the basis for a claim must be attributable to the government before a contracting officer can assert jurisdiction," Performance Contracting, Inc. v. Seaboard Sur. Co., 163 F.3d 366, 371 (6th Cir. 1998), the Ninth Circuit has held that where a subcontractor's claims did not "challenge [government] conduct or suggest the [government] was responsible for increased costs," the contracting officer did not have jurisdiction to resolve the dispute under the Contract Disputes

Act, see NavCom, 92 F.3d at 880. In NavCom, the prime contractor submitted a claim to the contracting officer pursuant to the Contract Disputes Act despite the fact that the subcontractor "consistently alleged that [the prime contractor], and not [the government], was responsible for the increased costs." Id. After the subcontractor demanded arbitration and the prime contractor filed suit to enjoin arbitration, the Ninth Circuit disagreed with the prime contractor's argument that "if it can transform [the subcontractor's] claims into a claim against the government, no matter how distorted or unrelated to [the subcontractor's] original claims, review by the contracting officer is [the subcontractor's] sole avenue for relief and [the subcontractor] is precluded from asserting its claims in any other forum." Id.

The court further rejected the prime contractor's argument that the subcontractor was barred from arbitrating its claims because the subcontract attempted to bind the subcontractor to any related decision of the contracting officer under the prime contract. Id. In concluding that the subcontractor's claims were arbitrable, the Ninth Circuit explained that "[t]he parties cannot by contract expand the contracting officer's jurisdiction beyond that granted by the CDA." Id. at 881.

Though this Court is not bound by the Ninth Circuit's holding, it is persuaded by the Ninth Circuit's reasoning,

especially given the similarity of the present circumstances. Right Way's claim neither challenges government conduct nor suggests that the government is responsible for its increased costs. Compl. Ex. 5. It requests relief from Agviq, which does not "directly affect the government." S&M Constructors, Inc. v. Foley Co., No. 92-0142-CV-W-6, 1992 WL 37515, at *1 (W.D. Mo. Feb. 21, 1992). Though Agviq claims that the government is ultimately responsible for the delay causing the increased costs, Opp'n Mot. Dismiss Prelim. Inj. 9-10, this contention does not transform Right Way's claim into one against the government. See NavCom, 92 F.3d at 880 (rejecting prime contractor's argument that subcontractor's claims were claims against the government because "ultimate financial responsibility will rest with that entity"); S&M Constructors, 1992 WL 37515 at *1 (concluding that arbitration clause of similar subcontract was properly invoked where "the present arbitration does not, as described, directly affect the Government"). Right Way's claim is thus not one that can be properly asserted under the Contract Disputes Act.

Agviq argues that "[w]hether the [Navy] is liable or not is not relevant" because the Subcontracting Agreement provides an exception to arbitration "when any claim presented by [Right Way] to Agviq is asserted against the [Navy], regardless of whether it is or not claimed that liability lies on the Navy."

Opp'n Mot. Dismiss 12. This argument is unpersuasive because, as explained in NavCom, the Subcontracting Agreement may not expand the jurisdiction of the Contract Disputes Act; a claim that is not against the Navy may not be asserted against the Navy. See NavCom, 92 F.3d at 881; see also Performance Contracting, 163 F.3d at 371 (observing without holding that no jurisdiction exists where the "claims, on their face, are not against the government, and the trial court made no finding whatsoever that these claims were somehow attributable to the [government]"); Riley Elec. Co. v. American Dist. Tel. Co., 715 F. Supp. 813, 819 (W.D. Ky. 1989) (concluding that the Contract Disputes Act was inapplicable to claim despite clause in contract requiring that all disputes be resolved in accordance with the Contract Disputes Act). Agviq's argument that Right Way must submit its claim under the Contract Disputes Act because Exhibit F of the Subcontracting Agreement requires Right Way to do so fails for the same reason: even if Right Way were under such an obligation by contract, it cannot submit a claim that falls beyond the jurisdiction of the Contract Disputes Act.

The conclusion that Right Way's claim cannot be sponsored and submitted under the Contract Disputes Act also accords with commonsense principles of contractual interpretation. Right Way correctly points out that if Agviq could submit to the government any of Right Way's claims it so chooses, the

arbitration clause would have no binding effect because Agviq could avoid arbitration whenever it pleased. Mot. Dismiss 16. This outcome would fly in the face of the clear intent of the arbitration provision to require the parties to arbitrate at least some claims. As a result, this Court determines that Agviq cannot assert Right Way's claim against the Navy in accordance with the Contract Disputes Act, and consequently Exception 24.2.2 does not apply to bar the arbitration.

### b. Exception 24.2.3

Agviq alternatively asserts that Right Way's claim falls into Exception 24.2.3, which supposedly excludes any claim from arbitration "when the contract between the Contractor and Owner does not provide for binding arbitration." Agviq argues that this exception is distinct from Exception 24.2.2. Opp'n Mot. Dismiss 7. It appears clear from the Disputes Clause that the Prime Contract in fact does not provide for binding arbitration, so if Exception 24.2.3 is read to constitute a separate exception, then Right Way's claim ought not be arbitrated under the Subcontracting Agreement.

Right Way argues that Exception 24.2.3 is in fact not a separate exception, but part of Exception 24.2.2. This would mean that there are two, not three, exceptions to arbitration in the Subcontracting Agreement: "(i) when the claim is for contribution or indemnity in relation to an action by a third

party who is not subject to an arbitration agreement [24.2.1]; and (ii) when the claim asserted by [Right Way] against Agviq is passed through to the owner, that ism [sic] the Navy, and the contract between Agviq and the Navy does not provide for binding arbitration [24.2.2 and 24.2.3]." Mot. Dismiss 6 (emphasis added).

This Court is persuaded by Right Way's interpretation for several reasons. First, the punctuation of these provisions implies that the language in Exception 24.2.3 is a condition to Exception 24.2.2. While Exceptions 24.2.1 and 24.2.2 are separated by a semicolon and the conjunction "or," Exceptions 24.2.2 and 24.2.3 are merely separated by a comma. Subcontracting Agreement, Art. 24.2. Second, Exception 24.2.3 begins with the word "when," indicating that it is a continuation of Exception 24.2.2. Id. Third, it would make little sense to exempt claims from arbitration whenever the Prime Contract does not provide for binding arbitration. If the Prime Contract indeed does not provide for binding arbitration, the entire arbitration clause of the Subcontracting Agreement would be rendered superfluous because all claims would fall into that exception. Finally, though his decision is clearly not binding on this Court, it should be noted that the Arbitrator also read Exceptions 24.2.2 and 24.2.3 as two conditions to one exception. See Resolution & Order 3-4.

Reading Exception 24.2.3 as a further condition to Exception 24.2.2 consequently ends the analysis. Because Exception 24.2.2 is not met, it is irrelevant that the conditions articulated in Exception 24.2.3 may be met. Thus, Right Way's claim is arbitrable under the contract as matter of law, and Right Way is entitled to summary judgment.

**B.    Motion for Leave to Amend**

Leave to amend a complaint shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Futility of a proposed amendment, however, "is fully sufficient to justify the denial of a motion to amend." <u>Hatch</u> v. <u>Department for Children, Youth & Their Families</u>, 274 F.3d 12, 19 (1st Cir. 2001) (citing <u>Correa-Martinez</u> v. <u>Arrillaga-Belendez</u>, 903 F.2d 49, 59 (1st Cir. 1990)). If leave to amend is sought before either party has moved for summary judgment, "the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)"; if it is sought after a motion for summary judgment has been made, the amendment "is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence." <u>Hatch</u>, 274 F.3d at 19.

Though Agviq maintains that its original complaint was "meritorious," it explains that it has since "analyzed its possibilities and decided to conduct a very careful study of

[Right Way's claim] in order to adhere [the] claim . . . to the provisions of the Contract Disputes Act." Mot. Leave Am. 3. Agviq informed the Court that it accordingly "decided to certify" Right Way's claim. Id. The only discernible change in the proposed amended complaint, which continues to allege that it is Right Way's contractual obligation to certify its claim, is that Agviq now alleges that it has certified the claim and submitted it to the Navy in accordance with the requirements of the Disputes Clause and Contract Disputes Act, thereby fulfilling the requirements of Exception 24.2.2. Proposed Am. Compl. ¶ 18, ECF No. 31-1.

Agviq has not shown through substantial evidence that the proposed amendment would entitle it to relief. Agviq fails to recognize that proper certification of the claim is not the reason that Exception 24.2.2 does not apply; rather, Agviq may not assert the claim to the Navy under the Contract Disputes Act at all because Right Way's claim is against Agviq, and a government contracting officer "has no jurisdiction to resolve disputes between a subcontractor and the prime contractor." NavCom, 92 F.3d at 880. If Right Way's claim were one against the Navy, the question of whether the claim has been asserted properly -- that is, with a certification pursuant to the Dispute Clause and Contract Disputes Act -- comes into play. Cf. United States v. Johnson Controls, Inc., 713 F.2d 1541, 1557

(Fed. Cir. 1983) ("The certification issue would only present itself if we concluded that [the subcontractor] was a "contractor" under the CDA. . . . Since we hold that there was no privity between [the subcontractor] and the government, we do not reach the certification issue."). Because the claim is not one that Agviq may assert under the Contract Disputes Act, however, whether or not the claim has been properly certified is irrelevant, and Agviq's proposed amendment is thus futile.

While futility may fully justify the denial of a motion for leave to amend, Agviq's delay in proposing this amendment reinforces the conclusion that its motion ought be denied. "[P]arties seeking the benefit of [Rule 15's] liberality have an obligation to exercise due diligence; unseemly delay, in combination with other factors, may warrant denial of a suggested amendment." Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1517 (1st Cir. 1989). Agviq gives no satisfactory explanation as to why it is suddenly now able to provide the certification that it previously maintained precluded it from asserting the claim against the Navy in accordance with the Contract Disputes Act. See Compl. ¶ 32; Mot. Leave Am. 2. It merely states that it decided to certify the claim after "analyz[ing] its possibilities and decid[ing] to conduct a very careful study" of Right Way's claim. Mot. Leave Am. 3. This assertion not only fails to explain why it once

[24]

apparently was, but now no longer is, Right Way's obligation to certify the claim, but it also invites one to wonder why Agviq only decided to conduct such a thorough analysis nearly four months into this litigation. The First Circuit has identified "relevant indicators point[ing] uniformly toward disallowance" of a motion to amend, such as where "[t]he facts upon which the proposed [amendment] rested were known to [the moving party] all along" and where the moving party "never proffered a satisfactory explanation for its delay." Quaker State Oil Ref. Corp., 884 F.2d at 1517-18. Here, too, these factors weigh against granting leave to amend.

## III. CONCLUSIONS

For the foregoing reasons, this Court (i) GRANTS summary judgment on all counts to Right Way; (ii) DENIES Right Way's motion to strike as moot; (iii) DENIES Agviq's motion for reconsideration; and (iv) DENIES Agviq's motion for leave to amend. Agviq has no right to relief and judgment will enter so declaring.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE